**Wilbert G. EVANS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 12935.

United States Court of Appeals District of Columbia Circuit. Argued March 2, 1956. Decided April 12, 1956.

Williams, Washington, D. C., was on the brief, for appellant.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and E. Riley Casey, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Defendant was charged in a two-count indictment with grand larceny, D.C. Code, § 22–2201, 1951 Ed., Supp. III, and with unauthorized use of a vehicle, D.C. Code, § 22–2204, 1951 Ed., both growing out of the same act. He was convicted on both counts. The trial court sentenced him to imprisonment from two to five years on the unauthorized use count, and from two to seven years on the grand larceny count, directing that these sentences run concurrently. Defendant appeals, urging, among other things, that it was error to submit both counts to the jury as they grew out of the same set of facts and circumstances, and that the offense of unauthorized use is included in that of grand larceny. We find no error on this point.

The same act may at times constitute two offenses and justify findings of guilty on two counts, and separate sentences thereon may be imposed, providing they run concurrently. The penalty provided by the Code covering the offense of grand larceny is from one to ten years; the penalty for unauthorized use is a fine or imprisonment not exceeding five years, or both. The sentence under the grand larceny count was no greater than the court had the right to impose. A different result would probably be necessary if the sentences had been imposed to run consecutively. On the propriety of convictions under both counts of an indictment charging includable offenses where the sentences are made to run concurrently, see Ekberg v. United States, 1 Cir., 1926, 167 F.2d 380.

Mr. William A. Tinney, Jr., Washington, D. C., with whom Mr. Wesley S.

Defendant complains of the refusal of the trial court to declare a mistrial because of argument of government counsel with reference to the question of the legality of repossession of automobiles. It was the theory of the prosecution that defendant and a companion [1] had stolen an automobile; the defense was the defendant had been directed by a man engaged in the automobile business, for whom defendant had previously repossessed cars payments on which were in arrears, to pick up the car in question and that he had taken it in good faith even though it later developed that payments on the car taken were not in arrears. While on the witness stand, Lieutenant Williams, assigned to the auto squad and a witness for the prosecution, answered on cross-examination as to the procedure for repossessing cars where there had been default in payment:

" * * * Actually, a person is supposed to get a United States marshal to replevin the car, to actually take the car.

"Q. Unless the contract specifies otherwise?

["The Assistant United States Attorney]: I object as a matter of law; even if the contract specifies otherwise, it is a civil claim and has to be prosecuted by the courts.

"The Court: Sustained.

\* \* \* \* \* \*

"Q. Then, sir, let me put this question to you. Is it a fact, then, if a person who is not a private detective makes a repossession, he does not violate any law, although he may violate some regulation that the police have set up? A. My own thought on this thing is—I couldn't give you the law on it—it would be up to the U. S. Attorney to do it. My own thought on this thing is the whole thing is illegal, the whole reposssession business is illegal, but it is just one of those things. There are a lot of things illegal that just go on and on and nobody is prosecu-

ted under those laws, and we have cleaned it up quite a bit. Most of the men that repossess cars are private detectives. They report the cars in to us that they repossess. They report in that the car has been repossessed and the owners are satisfied. When we have a complaint, we take it to the U. S. Attorney's office and settle over there whatever matter they feel can be settled."

While at this point defense counsel asked the court to say to the jury that they should disregard the witness' testimony "as regards what the law is," the court stated he would "instruct the jury at the proper time."

During the argument to the jury, the prosecutor stated:

"\* \* \* And the defense of Evans is that he went out there to pick it up under an assumed right. He thought he had the right to pick it up because Mr. Cabral had told him to repossess that car.

"Now if all those facts were true, it would be a very possible legitimate defense of this case,—not that repossessing cars is in any way legal. That in itself is illegal. People just can't help themselves to other people's property without taking the due process of law that everyone is entitled to. Even if you failed to make your time payments on an automobile, they just can't come out and seize your automobile without first notifying you that you have failed to pay and then going in and suing on the contract and getting a court execution on the contract and having a marshal go out and repossess the property.

"A man has no right to go out and take another man's property, as these people have assumed to do. As the police officer explained to you, however, discount companies have taken it upon themselves to break the law in this respect. That doesn't make it right, but they do

---

1. The companion was acquitted by the same jury which convicted Evans.

it, and in order to control them, Lieutenant Williams told us that they require them to have a private detective and that whenever they repossess a car, they notify the Police Department of which car they are going to repossess."

While at the bench, counsel made motion for a mistrial:

"Mr. McKenzie: Before we leave, so we wouldn't have to come back, I again move now to withdraw a juror on the basis of the argument of the District Attorney that repossessing cars is a crime. He stated flatly to the jury that repossessing cars is criminal. There is no proof of that in this case one way or the other, and I think we are entitled to a mistrial.

"The Court: Did you say that in that way?

"[The Assistant United States Attorney]: No. I said it is not legal, and there is proof that it is not legal. Lieutenant Williams testified to that.

"The Court: All right, your motion will be denied."

While defense counsel probably would have been better advised to have asked the court to instruct the jury to disregard that part of the argument objected to, rather than to have asked for a mistrial, the fact is that the argument was definitely injurious to the defendant.

The jury were allowed to believe that in any event, even if his version of the taking was correct, the defendant was at the time of the taking of the automobile engaged in an illegal act. In other words, the jury were permitted to believe that, even if the defendant had no criminal intent, he was engaged in an illegal enterprise; and it requires no stretch of the imagination to see the effect on the minds of the jury of such an argument—one based on a wrong premise. It is true, of course, that Lieutenant Williams' testimony that "the whole thing [repossession] is illegal" was brought out on cross-examination; however, the court was asked to tell the jury to disregard the testimony as to "what the law is" and he did not do so. The jury were not instructed to disregard the testimony or argument on this point, and they went to the jury room with the thought in mind that defendant had, at all events, been guilty of an illegal act.

The government urges that the admission of the testimony in question—even if inadmissible—was harmless error as the jury were instructed that the government had to prove every element of the crime, including intent, beyond a reasonable doubt. We do not agree. The stigma of claimed illegality of the defendant's action was taken by the jury into the jury room and could not but have had an adverse effect. This requires reversal.

Reversed.