William Condon GRAHAM, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13592.

United States Court of Appeals
Sixth Circuit.

Aug. 13, 1958.

———◆———

Ray L. Brock, Jr., Chattanooga, Tenn., and William E. Badgett, Knoxville, Tenn. (Hager Odom, Chattanooga, Tenn., on the brief), for appellant.

James M. Meek, Asst. U. S. Atty., Chattanooga, Tenn. (John C. Crawford, Jr., U. S. Atty., John F. Dugger, Asst. U. S. Atty., Knoxville, Tenn., on the brief), for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The indictment in this case, returned in the Eastern District of Tennessee, charged that the appellant, William Condon Graham, on or about October 27, 1957, "purchased four hundred sixty-nine (469) one-half grain morphine sul-

phate tablets, a derivative of opium, not in or from the original stamped package.", in violation of Section 4704, Title 26 U.S.Code. In his first trial in January, 1958, the jury was unable to agree. There was considerable publicity about the case. In his second trial in April, 1958, the jury returned a verdict of guilty and the appellant received a sentence of five years imprisonment, from which judgment this appeal was taken.

The evidence showed the following. Under the authority of a search warrant issued by a Tennessee State judge, two agents of the Tennessee Bureau of Identification searched the apartment of the appellant in Dayton, Rhea County, Tennessee, in his absence at approximately 12:10 A.M. on October 27, 1957. They gained entrance by breaking a small piece of glass in the door and opening the door from the inside. Agent Barksdale testified that he found a small bottle, without any label or federal tax stamps on it, containing 469 one-half grain tablets of morphine sulphate in the headboard of appellant's bed and also one broken and one unbroken hypodermic syringe with several needles and a blackened silver spoon. The bottle containing the tablets was subsequently turned over to a narcotic agent of the United States Government. An analysis showed the tablets to be morphine. The appellant was arrested later that morning in Hamilton County, Tennessee, and was taken to the Hamilton County Jail, where he was examined by the agents and where his clothes and his car were thoroughly searched. No morphine was found. On October 28 he was taken to Dayton, Tennessee, at which place a state charge was filed against him for the illegal possession of approximately 250 morphine sulphate one-half grain tablets. The present indictment by the Federal Grand Jury was returned on November 12, 1957.

Appellant testified that he did not know what the bottle contained, that he had the bottle in his possession only be-

cause he was keeping it for one Willard Yarnell, that he had loaned Yarnell $250.00 to enable him to secure a necessary eye operation and that Yarnell requested that he keep the bottle until Yarnell was released from the hospital. He also testified that he knew Yarnell to be an addict but that he felt sorry for him and had given or loaned him money on many occasions. He explained that by reason of ulcers about three-fourths of his stomach had been removed with resulting complications, and that he bought and used the hypodermic syringe for the purpose of administering to himself prostigmin, which was the treatment he received when he went to the hospital for the same trouble. This was supported to considerable extent by medical testimony.

Yarnell testified that he did not borrow $250.00 from the appellant and that he did not give the appellant the bottle of morphine sulphate tablets. Yarnell was a confirmed addict of forty years standing. He admitted that he had conferred with an eye doctor at about the time the appellant was alleged to have received the bottle from him, who told him that he had a cataract in one eye, and that he had discussed with the appellant the fact that he had gone to the doctor. He admitted the possibility of sending himself to the penitentiary if he admitted that appellant's testimony was the truth.

The Government's evidence was directed to the possession of the bottle of morphine sulphate tablets in appellant's apartment in Dayton, Tennessee, and no other evidence was introduced to show that the appellant ever used, sold, purchased or, in any manner, dealt with narcotics. A number of well known citizens of Dayton, Tennessee, testified as character witnesses for the appellant, giving him a good reputation except as to his reputation as a gambler.

Appellant first contends that the search warrant was invalid for several reasons, and that the evidence obtained by reason of the illegal search should have been suppressed. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Irvine v. People of State of California, 347 U.S. 128, at page 135, 74 S.Ct. 381, at page 384, 98 L.Ed. 561, cases cited in Note 5.

One attack upon the search warrant is that it was issued by the Judge of the Criminal Court of the Sixth Judicial Circuit of Tennessee whose territorial jurisdiction is claimed by appellant to be limited to Hamilton County, Tennessee. The warrant directed a search of appellant's apartment in Rhea County, which was in another Judicial Circuit in Tennessee, in which county it was executed. Counsel for appellant advises that there is no reported Tennessee decision on the question of the validity of a search warrant issued to a different judicial circuit. In support of his contention he relies upon Weinberg v. United States, 2 Cir., 126 F.2d 1004. The contention has some merit, and for the purposes of this appeal we will assume for that reason and others, without so deciding, that the search warrant was invalid.

▮▮▮▮ The Fourth Amendment in giving protection against unlawful searches and seizures applies to federal governmental action. Where the evidence sought to be suppressed has been improperly seized by state officers operating entirely upon their own account, the Fourth Amendment does not prevent its use by the Federal Government in a criminal trial. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; Collins v. United States, 6 Cir., 230 F.2d 424; Ford v. United States, 6 Cir., 234 F.2d 835, 837, certiorari denied 352 U.S. 972, 77 S.Ct. 364, 1 L.Ed.2d 325. See: Irvine v. People of State of California, supra, 347 U.S. 128, 136, 74 S.Ct. 381, 98 L.Ed. 561. But the rule is otherwise when the federal government, acting through its agents, participates in the wrongful search and seizure, so as to make it in substance and effect a joint operation of local and federal officers. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Lustig v. United

States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293. Appellant contends that this case falls within the rule of those cases.

The ruling in the Lustig case was based upon the fact that although the federal agent did not participate in the search from the beginning, he joined in it before it was completely accomplished and so was held to have participated in it. That did not take place in the present case. The federal agents did not instigate the search in this case. They did not join in it while it was in progress. They did not know about it until it was over. The opinion in the Lustig case expressly recognized the rule that a search by local officers "is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter." [338 U.S. 74, 69 S.Ct. 1374.]

Appellant relies upon the fact that some time prior to the search an Assistant Attorney General of the State had given the federal agent in that area a tablet taken from the person of the appellant, which upon analysis proved to be morphine, which information was given to the state official. But the evidence showed that the federal agent merely sent the tablet to Louisville, Kentucky, as a sample, as was customary in all cases of samples received from police officers and private individuals, and that he had nothing to do with procuring the state search warrant thereafter and did not know where the appellant lived.

There are a number of cases which hold that a long time understanding and practice between local police and federal officers, under which the local police arrest offenders and the prosecution is then taken over by the federal authorities if the offense is considered of sufficient importance to warrant federal prosecution, constitutes such participation in an illegal search incident thereto as to make the evidence inadmissible in a federal trial. Fowler v. United States, 7 Cir., 62 F.2d 656; Sutherland v. United States, 4 Cir., 92 F.2d 305; Lowrey v. United States, 8 Cir., 128 F.2d 477. The evidence in this case did not show such a situation. United States v. Scotti, D.C., 102 F.Supp. 747 (affirmed 5 Cir., 193 F.2d 644); United States v. Haywood, 7 Cir., 208 F.2d 156.

■ Appellant also relies upon Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126, in which evidence obtained as a result of wire tapping a telephone by state law enforcement officers pursuant to a state-court warrant authorized by state law, and without participation by federal authorities, was ruled inadmissible in a criminal trial in a federal court. But the basis of that ruling was that the evidence had been obtained by the state officers through violation of a federal statute, Section 605, Title 47 U.S.C.A., which contained an express, absolute prohibition against the divulgence of intercepted communications. The Court stated that its decision was not concerned with the scope of the Fourth Amendment. We are of the opinion that the District Judge was not in error in overruling appellant's motion to suppress and in permitting the evidence to go to the jury. Symons v. United States, 9 Cir., 178 F.2d 615, 618.

■ Appellant complains of the ruling of the District Judge in overruling his motion for a change of venue. He offered no witness in support of his motion, but relied upon an order previously entered by the District Judge which stated that because of much publicity in the area the Court was of the opinion that a fair and impartial trial would be impossible or very difficult to obtain from jurors selected in that division. The order directed that the regular panel of petit jurors serving in another division of the same district be required to serve for the trial of this case. Appellant contends that on the basis of such a finding by the District Judge, he was entitled under Rule 21

(a), Rules of Criminal Procedure, 18 U.S.C., to a change of venue. It will be noticed, however, that the order did not state that the appellant could not obtain a fair and impartial trial in that division or district. The order stated that he could not obtain it from the panel of jurors selected in that division. Obviously, the Judge held the view that appellant could obtain a fair and impartial trial in that division if the jurors were taken from another division. A party to a lawsuit is entitled to have his cause tried to an impartial jury, but he has no vested right in any particular juror. United States v. Chapman, 10 Cir., 158 F.2d 417, 419; United States v. Parker, 3 Cir., 103 F.2d 857, 862; Frazier v. United States, 335 U.S. 497, 507–508, 69 S.Ct. 201, 93 L.Ed. 187. The District Judge has a wide discretion in determining whether or not to grant a change of venue. We find no abuse of such discretion in the present case. Butzman v. United States, 6 Cir., 205 F.2d 343, 349–350, certiorari denied 346 U.S. 828, 74 S.Ct. 50, 98 L.Ed. 353.

■ Appellant did not object to the order directing the use of the jury panel from the other division, except insofar as his motion for a change of venue could be so construed. On voir dire examination no juror was excused for cause, and the appellant did not exhaust his peremptory challenges. Under the circumstances, he can not complain that he did not have an impartial jury. Spies v. People of State of Illinois, 123 U.S. 131, 168, 8 S.Ct. 21, 31 L.Ed. 80; Needham v. United States, 7 Cir., 73 F.2d 1, 3; United States v. Parker, supra, 3 Cir., 103 F.2d 857, 862; Frazier v. United States, supra, 335 U.S. 497, 505–507, 69 S.Ct. 201, 93 L.Ed. 187. Nor has he shown us in what way he was prejudiced by the order of which he now complains. Shurin v. United States, 4 Cir., 164 F.2d 566, 570; Needham v. United States, supra, 7 Cir., 73 F.2d 1, 2.

■■ Appellant's motions for a directed verdict were properly overruled. The Government's evidence included not only evidence of possession of the tablets but also statements by the appellant, which he denied having made, that he knew it was morphine. It was not necessary to introduce evidence showing a purchase. Under the statute, absence of appropriate taxpaid stamps was prima facie evidence of a violation of the statute, including venue. Landsborough v. United States, 6 Cir., 168 F.2d 486, 488; Bateman v. United States, 6 Cir., 225 F.2d 91; Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632.

■ The Court instructed the jury that if the Government proved beyond a reasonable doubt that the appellant knowingly had in his possession narcotic drugs in a container which did not have the taxpaid stamps on it, a prima facie case was made by the Government, which, however, could be repelled or offset by proof on the part of the defendant. Appellant contends that this instruction permitted the jury to return a verdict of guilty without proving a purchase on his part, as charged in the indictment. That is true. However, the instruction followed the statute which has been held to be constitutional. Casey v. United States, supra, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632; Goode v. United States, 80 U.S.App.D.C. 67, 149 F.2d 377, 378.

■ The United States Attorney in arguing the case to the jury was permitted over appellant's objection to argue that once the Government proved that the defendant had narcotic drugs in his possession, then the defendant had to prove that he got it from a doctor or a druggist. This was not a correct construction of the statute or of the issue in the case. Purchase of a narcotic drug from a registered dealer pursuant to a prescription is an express exception to the general offense of an illegal purchase, but it is not the only defense to the charge. Appellant did not claim such a defense. Possession by the appellant under circumstances claimed by him to exist in this case, was, if believed by the jury, also a valid defense

to the charge. Woolridge v. United States, 97 U.S.App.D.C. 67, 228 F.2d 38. He was entitled to have his defense properly presented to the jury. Compare: Smith v. United States, 6 Cir., 230 F.2d 935, 939; United States v. O'Connor, 2 Cir., 237 F.2d 466, 474, note 8. It was error to permit the United States Attorney to make such an argument to the jury. Evans v. United States, 98 U.S.App.D.C. 122, 232 F.2d 379, 382.

 During the cross-examination of Government witness Barksdale, the state officer who executed the search warrant, counsel for appellant introduced in evidence the search warrant and the return thereon for the purpose of showing the return made by the witness. The piece of paper on which was printed the form of warrant and its return also had on its reverse side another printed form with blank spaces for use in making the affidavit for the issuance of the warrant. The affidavit had been made by the witness Barksdale. The United States Attorney, in his closing argument to the jury, read to the jury over appellant's objection a portion of this affidavit which stated that his informant had advised him that she had been in appellant's apartment on many occasions, had seen appellant administer morphine to himself, had seen and tasted the contents of the bottle and knew it to be morphine. The informant had not testified at the trial. The evidence was clearly hearsay. The Government contends that it was nevertheless in evidence and properly used in that appellant introduced the paper in evidence without limitation, which permitted the Government to use any portion it saw fit. Canister Co. v. United States, 70 F.Supp. 904, 909, 108 Ct.Cl. 558, certiorari denied 332 U.S. 830, 68 S.Ct. 207, 92 L.Ed. 404; Baltimore &

O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 17. The rule is inapplicable in this case. Although there was only one piece of paper introduced in evidence, actually it contained two separate written instruments. The affidavit was executed and the warrant was signed by different persons. The physical condition of the exhibit resulted in two exhibits actually going to the jury, when legally only one was introduced. An exhibit, even though identified by a witness, is not in evidence until it is offered and received in evidence. Kay v. Cain, 81 U.S. App.D.C. 24, 154 F.2d 305, 306. Appellant did not offer the affidavit in evidence. The transcript shows that the offer in evidence was of the search warrant and the return only. It may be true that under the so-called doctrine of "opening the door" the Government would have been permitted to introduce the affidavit as one of a series of related documents. United States v. Corrigan, 2 Cir., 168 F.2d 641, 645; Grobelny v. W. T. Cowan, 2 Cir., 151 F.2d 810, 812. But the Government did not ask that the affidavit be also received in evidence, and it was not entitled to use it in its closing argument to the jury.

 The factual issue in this case, as shown by the evidence herein reviewed and the hung jury in the first trial, was a close one. The Government went to the jury on a prima facie case only, without proof of an actual purchase. Under such circumstances, the combined effect of the two errors above referred to was, in our opinion, prejudicial to the rights of the appellant and makes it necessary that the judgment be reversed.

The judgment is reversed and the case remanded to the District Court for a retrial in conformance with the views expressed herein.