**Julius INGRAM, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18568.**

United States Court of Appeals District of Columbia Circuit.

Argued March 11, 1965.

Decided by Judgment Entered June 29, 1965.

Opinion Rendered Nov. 4, 1965.

Appellant filed a brief pro se and his case was treated as submitted thereon.

Mr. Howard Adler, Jr., Washington, D. C. (appointed by this court as amicus curiae) argued for reversal.

Mr. Anthony A. Lapham, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, submitted on the brief, for appellee. Mr. John R. Kramer, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, WASHINGTON and BURGER, Circuit Judges.

FAHY, Circuit Judge, with whom WASHINGTON, Circuit Judge, joins:

Appellant was convicted on both counts of a two-count indictment based on one

---

assault with a knife. One count charged assault with intent to kill, in violation of D.C.Code § 22–501. The other charged assault with a dangerous weapon, in violation of D.C.Code § 22–502. He was given consecutive sentences which in the aggregate are from 86 to 258 months, the maximum sentence thus exceeding by six years the statutory maximum of fifteen years for assault with intent to kill, the more serious of the two offenses.

Under date of June 29, 1965, we entered an order, Circuit Judge Burger dissenting, vacating the sentence and remanding the case to the District Court for re-sentencing, the sentencing court to comply with Rule 32(a) and (c), Fed. R.Crim.P. The order recited that a majority of the court was of the opinion that it was improper to provide consecutive sentences for assault with a dangerous weapon and assault with intent to kill, there being but one assault. We noted that statements of the views of the judges would be filed at a later date. This we now do.

Our opinion above stated rests upon the view that Congress did not intend one transaction of the character described to bear two consecutive sentences.

As we understand the approach of the Supreme Court to the problem presented by this case the statutes are first examined to ascertain if they will bear interpretation as creating separate offenses. If so the court then inquires whether Congress also intended "to pyramid the penalties" Prince v. United States, 352 U.S. 322, 327, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), or only to establish a different degree or type of offense. In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the rule as to separate offenses is stated:

> * * * where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

And see Young v. United States, 109 U.S. App.D.C. 414, 416, 288 F.2d 398, 400; Berry v. United States, 72 App.D.C. 229, 113 F.2d 183; Kendrick v. United States, 99 U.S.App.D.C. 173, 175, 238 F.2d 34, 36. In *Blockburger* the Supreme Court held that different aspects of a single sale of narcotics charged as violating different provisions of the narcotics laws could be considered as separate offenses. Consecutive sentences for the several offenses were upheld. But in United States v. Universal C.I.T. Credit Corporation, *et al.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952), involving a violation of the Fair Labor Standards Act, the Court said,

> What Congress had made the allowable unit of prosecution—the only issue before us—cannot be answered merely by a literal reading of the penalizing sections. Generalities about statutory construction help us little. * * * The variables render every problem of statutory construction unique.

The Court goes on to state that,

> [W]hen choice has to be made between two readings of what conduct Congress had made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.

344 U.S. at 221–222, 73 S.Ct. at 229.

In a prosecution under the Mann Act the Court held that though two women were transported at one time in one vehicle it was a single offense:

> When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit.

Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). The Court rests on

> a pre-supposition of our law to resolve doubts in the enforcement of a

penal code against the imposition of a harsher punishment.

It notes also that the law there interpreted is one "in aid of social morality." 349 U.S. at 83, 75 S.Ct. at 621.

Called upon to decide whether consecutive sentences under the Federal Bank Robbery Act, 18 U.S.C. § 2113, could be had for robbery and entry to commit a felony arising out of the same transaction the Court held they could not, qualifying the decision as one "dealing with a unique statute of limited purpose and an inconclusive legislative history." Prince v. United States, 352 U.S. 322, 325, 77 S.Ct. 403, 405, 1 L.Ed.2d 370 (1957). The Court said the legislation was meant to broaden the reach of federal prosecution to include attempted bank robbery but that merger occurred when robbery was consummated. 352 U.S. at 328, 77 S.Ct. 403. At the same time the Court refers to the absence of any "indication that Congress intended also to pyramid the penalties." 352 U.S. at 327, 77 S.Ct. at 406.

We come now to Gore v. United States, 357 U.S. 386, 389–390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958), where the Court reaffirmed as it were its *Blockburger* rule in narcotic cases:

> The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic. * * * Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter.

One other decision of the Supreme Court should be referred to. It is Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). The statute covered an assault on federal officers. The Court interpreted the statute from the point of view of the cause of the assault rather than its effect, finding that when two officers were hit with a single shot only a single assault occurred:

> Neither the wording of the statute nor its legislative history points clearly to either meaning. In that circumstance the Court applies a policy of lenity and adopts the less harsh meaning.

358 U.S. at 177, 79 S.Ct. at 214.

From the foregoing review it is seen that the Court has looked in each case to the behavior against which the statute was directed and to the intent of Congress. It has found justification for consecutive sentences only in the narcotics area. In other instances merger, lack of explicit intent and a policy of lenity have been held in varying combinations to preclude consecutive sentences.

In the case at bar we cannot say that the two offenses were taken up and considered by Congress as parts of a single problem, with the result that where one offense occurs the congressional intent shines through that the other could not also be held to have occurred. The legislative intent is not so obvious. As the Chief Justice said in his dissenting opinion in *Gore,* "these are not problems that receive explicit legislative consideration," and the judiciary should not be led to "settle these questions by the easy application of stereotyped formulae." The stereotyped formula is that since there are two offenses, one requiring proof of a factor the other does not, two punishments are permissible. Looking beyond the stereotyped formula, however, we cannot say with any certainty that Congress intended that one assault with a knife in an attempt to kill would be twice punished because it was an assault with a knife. To say such an act constitutes both an assault with a deadly weapon and an assault with intent to kill does not say that the punishment may be twofold where the offenses are commingled in one

assault, unless it can be said also that two punishments were intended by Congress. We think this cannot be said. This is the substance of the holding in *Prince,* although expressed there in terms of only one crime being intended rather than only one punishment.

There are certain objective manifestations of Congressional intent which support our position. The District of Columbia Code sets out in four provisions the definitions and punishments for four kinds of assault with descending degrees of severity: D.C.Code § 22–501, Assault with intent to kill, rob, rape, or poison (15 years maximum); D.C.Code § 22–502, Assault with intent to commit mayhem or with dangerous weapon (10 years); D.C.Code § 22–503, Assault with intent to commit any other offense (5 years); D.C.Code § 22–504, Simple Assault (1 year). This structure suggests that the offenses of assault with intent to kill and assault with a dangerous weapon are regarded as offenses on the same spectrum, the former being worse than the latter. The statute suggests a gradient of aggravated assaults. Although the various sections may define "separate and distinct offenses," it is unlikely that Congress intended a single act to be punished cumulatively as both a more *and* a less serious form of aggravated assault.

Moreover, D.C.Code § 22–3202 provides that a person who commits a crime of violence when armed with a pistol or other firearm shall be punished by imprisonment up to five years "in addition" to the punishment for the other crime. If Congress had intended to punish an assault with intent to kill committed with a knife more severely than an assault with intent to kill but without such a weapon, it could have done so in similarly clear manner.

We draw support also from our decision in Evans v. United States, 98 U.S. App.D.C. 122, 232 F.2d 379. Evans had been convicted of unauthorized use of a vehicle and grand larceny, and given concurrent sentences. He contended *inter alia* that it was error to submit both counts to the jury since they arose from the same facts. Holding there was "no error on this point," but reversing on other grounds, we said:

> The same act may at times constitute two offenses and justify findings of guilty on two counts, and separate sentences thereon may be imposed, providing they run concurrently. * * * A different result would probably be necessary if the sentences had been imposed to run consecutively.

98 U.S. App. D.C. at 123, 232 F.2d at 380. Each charge required an element of proof not required in the other. See D.C.Code § 22–2201 and § 22–2204.

■ Congress created no crime of assault with a deadly weapon with intent to kill. It would be pure speculation to conclude that Congress intended the punishment for such a single assault to permit the consecutive sentences imposed in this case. Doubts in this area of the law are resolved not only in favor of lenity, but in favor of rational and reasonable probabilities of legislative intent where such intent is left unclear. In *Gore,* on the other hand, the Court was clearly of the view that Congress affirmatively intended each of the separate offenses to bear its own penalty, in aid of the determination of Congress to use severe methods to stamp out the traffic in narcotics.

BURGER, Circuit Judge (dissenting):

The question of the legality of sentencing Appellant to consecutive terms for violations of 22 D.C.Code § 501 and § 502 turns on whether the offenses created by these sections are separate. Section 501 makes it an offense to commit an assault with intent to kill, and § 502 creates the offense of assault with a dangerous weapon. If Congress intended these two offenses to be alternative means of proscribing certain conduct, the consecutive sentences cannot stand; but if it intended the offenses to be separate and did not consider assault with a dangerous weapon a lesser included offense of assault with intent to kill, the

District Court should be affirmed. The question of punishment follows from the pattern of violations envisaged by Congress in enacting § 501 and § 502.

It is a settled principle of law which is hardly a "stereotype" that separate offenses are punishable consecutively even when they arise out of the same transaction. Ekberg v. United States, 167 F.2d 380, 384 (1st Cir. 1948); see Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280 (1958); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed 306 (1932). The difficulty arises in discerning the intent of Congress.

A method for determining congressional intent, however, has been developed: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, *supra*, 284 U.S. at 304, 52 S.Ct. at 182. In that case consecutive sentences for a sale of narcotics not in the original stamped package and not made pursuant to a written order of the purchaser—constituting violations of two different statutes—were upheld. In Gore v. United States, *supra*, which reinforced *Blockburger*, consecutive sentences for violations of three narcotics provisions were upheld.

In the instant case, as in *Blockburger* and *Gore,* different facts need be proved to make out a violation of § 501 and § 502. There can be no conviction under § 501 without proof of intent to kill and there can be no conviction under § 502 without proof of use of a dangerous weapon; intent to kill is not necessary for § 502 and proof of use of a dangerous weapon is not essential under § 501. Since each cannot be proved without a fact that is not necessary for the other, the *Blockburger-Gore* test is fully satisfied.

*Gore* indicates that this formulation of statutory construction was not made in ignorance of the legislative history of the narcotics laws, and the Court refused, after an examination of the congressional intent, to upset it. The Court found that, *"If the* [succession of] *legislation reveals anything,* it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter."* 357 U.S. 386, 390, 78 S.Ct. 1280, 1283 (Emphasis added.) It used this affirmative stringent purpose of Congress, as the italicized phrase implies, merely to refute the contention that the literal reading of the statutes, as construed under the *Blockburger* test, should be upset in view of the passage of narcotics laws at various times; it did not require proof of such a legislative intent to read the statutes to sustain consecutive sentences.

In the instant case, therefore, we need not find an affirmative intent to improve and extend the laws against attacks on the person to infer that the two sections were meant to be separate, thus permitting consecutive sentences. Congressional intent in this area is rarely spelled out, but the holdings in *Gore* and *Blockburger* seem to me to preclude our finding any basis for overturning the plain words and pattern of the statute as the expression of the congressional will. Sections 501 and 502 were not passed at different times as were the various narcotics statutes involved in *Blockburger* and *Gore,* but that fact indicates all the more clearly that Congress realized it was setting up two crimes in two different sections and militates more strongly against an argument that it was unknowingly dealing with the same problem twice in slightly different and overlapping ways. Two different crimes were intended to be covered.

The cases cited by the majority do not call for a different construction. In United States v. Universal C.I.T. Credit Corporation, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), the issue was whether the unit of prosecution was each employee on each occasion the employer failed to obey the Fair Labor Standards Act. Similarly, in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905

(1955), the question was whether two women being transported in one vehicle at one time gave rise to two violations of the Mann Act. And in Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed. 2d 199 (1958), one shot that hit two officers was found to be only one assault. In these three cases, the Supreme Court refused to attribute to Congress an intent to prohibit behavior depending on the number of objects affected. The case of one act violating one provision but having multiple objects is entirely different from one act violating different laws. Gore v. United States, *supra*, 357 U.S. at 391, 78 S.Ct. 1280.

Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), involves a situation more analogous to the instant case, although the distinction between entrance with intent to rob and the actual robbery is a good deal narrower than that between assault with intent to kill and assault with a dangerous weapon since there will be very few cases where the intruder enters without already having the intent to rob, thus making the entrance with that intent a lesser included offense of the robbery itself. Congress had been prompted to add the crime of entering with intent to rob to ensure a basis for prosecution where the robbery was not completed after the entry. The Court recognized that the question posed was unique and warned, "It can and should be differentiated from similar problems in this general field raised under other statutes" and observed, "It was manifestly the purpose of Congress to establish lesser offenses." 352 U.S. 322, 325, 327, 77 S.Ct. 403, 405, 406. Thus the sections in *Prince,* while they could possibly be interpreted to be separate, were *intended* by Congress to deal with one problem.

Such is not the case with assault with intent to kill and assault with a dangerous weapon; these violations involve different behavior and the fact that both may be present in the same deed does not modify the congressional intent that they be treated separately. If Congress had wanted to have separate sections to cover

different behavior but to prevent consecutive sentences where they coincide in one criminal transaction, it would be necessary for it to indicate this affirmatively. The doctrine allowing consecutive sentences for separate offenses is so well accepted that only in that sense can it be called a "stereotyped formula," and this puts the burden on Congress to indicate plainly when it intends a change. The cases cited by the majority implicitly accept this by focusing on whether the offenses were intended by Congress to be separate; they deny consecutive sentences only when they do not find separate offenses.

Since the offenses of which Appellant was convicted are separate and distinct, as defined by the *Blockburger-Gore* formulation, it follows that the consecutive sentences ought to be affirmed.