THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALBERTO CRUZ COLLAZO, Defendant and Appellant.

No. CR-66-410. Decided January 10, 1968.

*Pedro Malavet Vega* and *José Enrique Ayoroa Santaliz* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Appellant was convicted of a violation of § 4 of the Weapons Law of Puerto Rico, Act No. 17 of January 19, 1951. This § 4 textually provides the following:

"Any person who possesses, bears or carries any weapon of the kind commonly known as blackjack, billy, or metal knuckles; and except when they are borne or carried on the occasion of their use as instruments proper of an art, sport, profession, occupation, or trade, any person who bears or carries any weapon of the kind commonly known as knife, dirk, dagger, sword, slungshot, sword cane, spear, jackknife, stiletto, ice pick, or any similar instrument, including also safety razor blades and bludgeons when drawn, exhibited, or used in the commission of a public offense or in the attempt of such commission; and any person who uses against another any of the weapons above named in this section, shall be guilty of a misdemeanor and if previously convicted of any violation of this Act, or of any of the offenses listed in Section 17(*b*) hereof, shall be guilty of felony."

The foregoing section establishes three different modalities of violating it:

(1) To possess, bear or carry a weapon commonly known as "blackjacks", billies, or metal knuckles.

(2) To bear or carry a weapon known as *knife,* dirk, dagger, sword, slungshot, sword cane, spear, jackknife, stiletto, ice pick or any similar instrument, except when they are borne or carried on the occasion of their use as instruments proper of an art, sport, profession, occupation or trade. This bearing or carrying includes also safety razor blades and bludgeons when drawn, exhibited, or used in the commission of a public offense or in the attempt of such commission.

(3) To use against another person any of the weapons above named in this § 4.

The information against appellant charges him with:

". . . unlawfully, willfully, and maliciously bearing, carrying and transporting a knife, said knife being a deadly weapon with which great bodily injuries can be caused, which knife defendant bore, carried and transported in this case, not on the occasion of its use as an instrument proper of an art, sport, profession, occupation or trade, *and which he used in the commission* of an offense of attempt to kill *(felony)*."

Of the three modalities previously stated by which § 4 of the Weapons Law can be violated, appellant was charged with two of them in the information:

(i) The bearing, carrying, and transporting of a *knife* on the occasion of its use not as an instrument proper of an art, sport, profession, occupation or trade; and

(ii) The use of that knife against another person in the commission of an offense of attempt to kill.

With respect to this information, the evidence of the People revealed that the facts occurred in appellant's commercial establishment. A group of persons were playing cards. Appellant was not playing. There was an incident between the latter and the victim, which brought the game to an end. The victim Nicolás Ramos Ayala testified: (R. pp. 16–18)

". . . We stopped the game, and I picked up the cards and gave them to him [appellant], and when I gave them to him he told me: 'you are a *charlatán,*' and he tried to slap me, but

did not reach me; and the other guys took me outside, and he went into the bar; but since he and I were good friends before that, I told the guys: 'I want to go to Berto and give him an excuse or beg his pardon if I have offended him'; and then, when I went to the front of the bar, I asked him why he was angry at me, he became furious, and he took a knife for cutting sausage, and not even two words were spoken . . . .

Q. Did this fellow do something with the knife?

A. Yes, he did.

Q. What did he do?

A. Yes. He thrust it here."

Later the victim testified that it was one of those knives used in the stores to cut sausage, it was six or seven inches long.

The only other witness for the People who testified, after narrating the incident related with the card game, said with reference to the knife: (R. p. 77)

"Q. What did Nicolás Ramos do?

A. He went inside the bar and said: 'Give me a cigarette, Berto,' and he lighted it for him, and when he lighted it Berto Cruz slapped Nicolás Ramos. And then Nicolás Ramos said to him: 'Berto, what have you done?', and he stepped aside and grabbed two bottles; and then he stepped this way and swung the two bottles, which did not hit him, and crashed over there; and then when Nicolás Ramos threw the bottles, Alberto Cruz dodged them, he cut him here, and cut him again, and then I went out to look for the police.

Q. Did you see that knife?

A. Yes, I saw the knife. It was about six and a half to seven inches long. . . .

. . . . . . . .

A. Well, when he slapped him, *he armed himself* with the knife, because the knife was close to him; and Nicolás turned around and grabbed the two bottles."

With the former evidence in the record, it is unquestionable that it was not proved that appellant was guilty of a violation of the second modality of the previously stated § 4, that is, the *bearing or carrying of a knife*. The evidence did

reveal a violation of the third modality, the *use* of a knife against another person.

Appellant invokes in his brief the benefit of our decisions on the incidental carrying of a weapon which, under those circumstances, has exonerated from a charge of bearing or carrying it. *Cf. People* v. *Moll,* 28 P.R.R. 733 (1920) ; *People* v. *Correa,* 36 P.R.R. 399 (1927) ; *People* v. *Borges,* 23 P.R.R. 486 (1916) ; *People* v. *Arana,* 72 P.R.R. 768 (1951) ; *People* v. *Suazo,* 65 P.R.R. 27 (1945).

However, under the present § 4 he would not be totally exonerated in this case on the basis of said doctrine, since there was evidence of the third modality; evidence that appellant *used* the knife against another person.

Other considerations arise, however, as to the problem involved. Together with the information of a violation of § 4 of the Weapons Law, an information was filed against appellant charging him with:

". . . unlawfully, willfully, maliciously, and criminally with premeditation, and the firm and decided purpose of killing a human being, he assaulted and battered Nicolás Ramos, a human being, *with a knife,* a cutting instrument, . . . and in assaulting this person he did so with the intent to commit murder . . . ."

The trial of the previous information of assault with the intent to commit murder—§ 218 Penal Code—was heard before a jury. It was stated that this information and the violation of § 4 of the Weapons Law would be submitted on the same evidence. The jury acquitted the appellant of the crime of assault to commit murder.

■ In view of the particular circumstances presented by this case, in which the bearing or carrying of the knife was not proved (2d modality) as a prohibited act apart from its *use,* the misdemeanor for the *use* of the knife in the assault of the victim punished in § 4 of the Weapons Law, constituted the same criminal act as the assault of the victim

in the felonious attack to commit murder, and it was included in the verdict of acquittal of the jury.

Although § 4 of the Weapons Law has to do with the possession, bearing, and carrying of the instruments it mentions, what is punished in the 3d modality set forth is an assault or an assault and battery against another person by using any of said instruments mentioned in the section.[1]

 Under the typical rule of law which also forms a part of our doctrine, in the prosecution under an information of assault to commit murder, the jury could return in this case, instead of a full acquittal or conviction of that offense, a verdict of assault to commit manslaughter or of aggravated assault and battery, these offenses of lesser degree being embraced or included within the greater offense charged against him. Because that is the applicable law, the court correctly gave instructions thereof in this case.[2] *People v. Pérez*, 65 P.R.R. 653 (1946); *People v. Fernández*, 76 P.R.R. 569, 571 (1954) and cases already cited; *People v. Llauger*, 14 P.R.R. 534 (1908); *People v. Lange*, 24 P.R.R. 210 (1916); *People v. Dumas*, 14 P.R.R. 384, 391 (1908); *People v. Gómez*, 14 P.R.R. 124 (1908); *cf. People v. Fuentes*, 63 P.R.R. 42, 43 (1944); *People v. Vega*, 20 P.R.R. 283, 288

---

[1] The record reveals that appellant having been acquitted by the jury of the offense of attack to commit murder, reduced to manslaughter, and having been convicted of a violation of § 4 of the Weapons Law, the court, in sentencing for this misdemeanor to one year in jail, granted appellant the benefits of a suspended sentence. Act No. 259 of April 3, 1946, as amended.

Judgment was rendered on October 29, 1965. Appeal was filed on September 20, 1966, close to expiration date of the probation. The appeal was perfected on April 18, 1967, the probation having expired. However, in view of the subsequent consequences which the conviction may have particularly in the light of § 4 of the Weapons Law itself, we are deciding on the merits.

[2] After all the evidence was presented, the prosecuting attorney requested the lessening of the offense to an information of attack to commit murder—§ 223 of the Penal Code—charging then that upon a sudden quarrel or heat of passion, and with the intent to commit murder, appellant *assaulted* Nicolás Ramos Ayala *with a knife*.

(1914); *People* v. *Sánchez*, 57. P.R.R. 705 (1940); *People* v. *Gómez*, 71 P.R.R. 764, 766 (1950).

■ To use a knife against another person, as stated in § 4, is nothing more than to assault or assault and batter a person with a. knife. Assault and battery, according to § 1 of the Act of March 10, 1904—33 L.P.R.A. § 821—is the use of any unlawful violence *upon the person* of another with intent to injure him, whatever be *the means* or the degree of violence used. It is aggravated, § 6—33 L.P.R.A. § 826—among other situations, when a serious bodily injury is inflicted upon the person assaulted, when committed with deadly weapons under circumstances not amounting to an intent to kill or maim; when committed by the use of means calculated to inflict great bodily injury.

The fact that we are concerned here with the personal assault and battery, contemplated by § 4 by means of the *use* herein of a knife, does not make our previously mentioned doctrine inapplicable. In this case, the bearing or carrying of the knife under § 4 not having been proved, but only the use thereof in the assault upon the person of the victim, the criminal fact of that use, which constituted the ground for the information and the prosecution for assault to commit murder, later manslaughter, was adjudged by the verdict of acquittal, as it would have also been adjudged by a verdict of conviction for the greater offense.

This is not the case where, according to our doctrine, a defendant having been acquitted by the jury of the criminal death, or of the criminal attack to cause death, whatever the reasons for acquittal, the court may however, convict him of the carrying of the weapon which he allegedly used, under the different weighing of the evidence by the judge. Here the record did not establish the bearing or carrying of the weapon.

There is nothing in the Weapons Law, in its § 4, which indicates that the lawmaker wished to punish in duplicate

the assault or assault and battery by the use of a weapon against another person, which the 3d modality of said section contains, and the assault or assault and battery punishable in the Act of 1904, it being the same act of assault. By analogy, see: *Prince* v. *United States*, 352 U.S. 322; *Heflin* v. *United States*, 358 U.S. 415; *Ingram* v. *United States*, 353 F.2d 872 (D.C. Cir.).

In the *Prince* case, the defendant was convicted of two violations of the Federal Bank Robbery Act. The first, under the provision of said Act with reference to taking from another person . . . by violence, intimidation, etc., property, or money or any other thing of value belonging to, or in the . . . custody, . . . of any bank, . . . . The second, under another provision which punishes whoever enters a bank, . . . with the intent to commit in such bank any felony affecting such bank . . . or any larceny.

The Supreme Court found the conviction illegal on this second count, the defendant having been convicted of the former. It stated that the gravamen of the unlawful *entry* offense was the intent to commit a felony, and that when the robbery was consummated, this intent was merged into the robbery and one offense only was committed.

In *Heflin*, a similar situation occurred. The defendant was convicted of violating the same Banks Act, for (i) taking property by force and violence, etc.; (ii) receiving the stolen property, and (iii) conspiring to violate the statute. The Court decided that the sentence for *receiving* the property as a consequence of taking it by violence was invalid. The act of stealing and receiving the property were merged in this case.

The aforementioned *Ingram* case is even more similar to the instant case. The Court of Appeals of the District of Columbia sustained that it was improper to impose consecutive sentences for assault with intent to kill, as in this case,

646

and assault with a dangerous weapon, under the principle that both things constituted only one criminal act.

We stated at the beginning that appellant was charged, in the information under § 4 of the Weapons Law, with (i) bearing and carrying the knife, and (ii) the use of the knife in the commission of an offense of attempt to kill.

The evidence did not support the first charge. The second was merged into and decided in the verdict of the jury.

The judgment appealed from will be reversed.

Mr. Justice Blanco Lugo dissented.

