**UNITED STATES of America**

v.

**Robert WESTON, Appellant.**

**No. 24588.**

United States Court of Appeals, District of Columbia Circuit.

Aug. 7, 1972.

See publication Words and Phrases for other judicial constructions and definitions.

———◆———

Mr. Guy M. Bayes, Washington, D. C. (appointed by this court), was on the brief for appellant.

Mr. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and Messrs. John A. Terry, John S. Ransom, and William H. Schweitzer, Asst. U. S. Attys., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was indicted for grand larceny of an automobile[1] and unauthorized use of the vehicle,[2] and was convicted by a jury on both charges. The trial judge imposed a sentence of imprisonment on each count and directed that they be served concurrently. Appellant advances several grounds upon which he would have us reverse the conviction. We have examined his claims with care but perceive no error in his trial. We accordingly affirm.

Louie Lamar Bailey awoke one morning to find his 1968 Pontiac missing from its parking space and the keys thereto missing from his apartment.[3] About three weeks later, Officer Salvatore Petros, on foot patrol, saw a bag of trash thrown into a public street from the left front window of a 1968 Pontiac standing at the curb. Appellant, its only occupant, was seated behind the steering wheel; the ignition key was in the switch and the motor was running. Questioned by the officer about the bag, appellant alighted, picked up the bag and put it inside the car. Officer Petros then asked to see appellant's opera-

---

1. D.C.Code § 22–2201 (1967).

2. D.C.Code § 22–2204 (1967).

3. Two keys to the car were contained with three others in a key case.

tor's permit and the registration card for the vehicle. Appellant stated that he had left both at home, and that the Pontiac was registered in his wife's name. By a check from a call box, the officer ascertained that appellant's permit had been revoked, whereupon he placed appellant under arrest for operating the car after the revocation.[4]

Officer Petros later learned that the car had been stolen and was then exhibiting the wrong license number. Examination of the vehicle revealed that the license plate issued for it was concealed by another plate which had been placed over it. Still later, it turned out that the car was Bailey's, as were the key in the ignition switch and four more keys ringed with it.[5] Bailey testified that he did not know appellant and that he had not given anyone permission to use his automobile.

These events were established at appellant's trial by the testimony of Bailey and Officer Petros, and such was the case in chief for the Government. Appellant, the sole defense witness, testified that on the day of his arrest one Ernest[6] picked him up in the Pontiac and later stopped, first to go into a building and then to assist another motorist who was parked in front of him. Appellant added that when Officer Petros approached, he moved behind the steering wheel preparatory to exiting, and that Ernest had seemingly disap-

peared. Appellant also insisted that he and Ernest had previously been guests in Bailey's automobile and in his apartment,[7] and denied that he had stolen or used the Pontiac. He admitted that he had informed the officer that he had an operator's permit and that the car was registered in his wife's name, and that he never told the officer that Ernest was the driver.

■■ At the conclusion of the Government's case in chief, appellant moved for a judgment of acquittal and renewed the motion after both sides had rested. He argues now that the evidence was legally insufficient to support conviction on either of the two counts of the indictment. In appraising that contention, we must view the evidence in the light most favorable to the Government[8] and, doing so, we have no difficulty in upholding the trial judge's action in submitting the case to the jury. To be sure, there was no witness who actually saw appellant steal or drive the Pontiac, but the Government's circumstantial evidence in each regard was sufficient to withstand appellant's motion. Indubitably, the car had been stolen by someone and driven from the place where Bailey had parked it, and three weeks later was found in appellant's sole possession. As the trial judge instructed the jury,[9] the exclusive and unsatisfactorily explained possession of property proven to have been recently stolen permits an inference that the pos-

---

4. D.C.Code § 40–302(d) (1967), quoted in relevant part *infra* note 24.

5. See note 3, *supra*.

6. Appellant said he had then known Ernest for three or four weeks but did not know his surname, residence or place of work.

7. Appellant was not permitted to testify to statements Ernest allegedly made to him as to prior authorization from Bailey to use the Pontiac. As evidence tending to prove the truth of the facts stated, the statements were hearsay which the trial judge was at liberty to exclude. *E. g.*, Cannady v. United States, 122 U.S.App. D.C. 99, 100–101, 351 F.2d 796, 797–798 (1965). See also United States v.

Harris, 141 U.S.App.D.C. 253, 258, 437 F.2d 686, 691 (1970). Since the statements were not proffered for the limited purpose of showing a belief—derived merely from their making—as to Ernest's authority, we do not consider their admissibility on that basis. See, *e. g.*, Miller v. Avirom, 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967).

8. *E. g.*, Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967) ; Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

9. See note 14, *infra*.

sessor is the thief.[10] We have held that where the property stolen is a motor vehicle, that inference may serve to support convictions of grand larceny[11] and unauthorized use.[12] Since the Government's case in chief established the elements essential to invocation of the inference, appellant's motion was properly denied.[13] It then became the function of the jury, under the court's instructions,[14] to accept or reject appellant's explanation[15] and, upon consideration of all circumstances,[16] to draw or decline the inference that he was the guilty party.[17]

■ Appellant contends, however, that the trial judge erroneously let in Officer Petros' testimony as to events transpiring after the colloquy over the bag-tossing incident. The argument, as we understand it, is that once appellant retrieved the bag and put it back in the Pontiac, the incident was over and the officer could not lawfully ask him to produce his operator's permit or the registration card for the car. On this basis, it is insisted that the facts uncovered by Officer Petros following nonproduction were inadmissible. We need not decide whether illegality of the officer's request would in any event outlaw introduction of the evidence developed by his ensuing investigation for we cannot accept the premise that the request was illegal.

■■ With exceptions not applicable here, it is unlawful to operate a motor vehicle in the District of Columbia without prior registration of the vehicle[18] and issuance of an appropriate permit to the operator.[19] The operator, moreover, is required to "have in his possession or in the motor vehicle . . . operated the registration certificate . . . re-

---

10. United States v. Johnson, 140 U.S.App. D.C. 54, 57–59, 433 F.2d 1160, 1163–1165 (1970); Pendergrast v. United States, 135 U.S.App.D.C. 20, 31–32, 416 F.2d 776, 787–788, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), and cases there cited.

11. United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 57, 433 F.2d at 1163. See also cases cited in Pendergrast v. United States, *supra* note 10, 135 U.S.App.D.C. at 31 n. 64, 416 F.2d at 787 n. 64.

12. United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 57, 433 F.2d at 1163. See also cases cited in Pendergrast v. United States, *supra* note 10, 135 U.S.App.D.C. at 31 n. 64, 416 F.2d at 787 n. 64.

13. See, *e. g.*, United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 60–61 n. 41, 433 F.2d at 1166–1167 n. 41.

14. Appellant argues that the instruction was erroneous. We do not agree. The instruction was a substantial reproduction of the one we recommended in Pendergrast v. United States, *supra* note 10, 135 U.S.App.D.C. at 34–35, 416 F.2d at 790–791. While *Pendergrast* was a robbery case, we pointed out that the recommended instruction may well serve "as a model, not only in robbery cases, but by adoption in the prosecution of any larceny-type offense." *Id.* at 34, 416 F. 2d at 790. That observation extends to trials on charges of grand larceny and unauthorized use of a motor vehicle. See United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 57–58, 433 F.2d at 1163–1164. We find no fault with its adaptation here.

15. *E. g.*, United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 61, 433 F.2d at 1167; Pendergrast v. United States, *supra* note 10, 135 U.S.App.D.C. at 31, 34–35, 416 F.2d at 787, 790–791.

16. Important among the circumstances, of course, was the period of time elapsing between the theft of the car and the discovery of appellant in possession of it. United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 60 n. 40, 433 F.2d at 1166 n. 40; Pendergrast v. United States, *supra* note 10, 135 U.S. App.D.C. at 32, 34–35, 416 F.2d at 788, 790–791.

17. United States v. Johnson, *supra* note 10, 140 U.S.App.D.C. at 61; 433 F.2d at 1167; Pendergrast v. United States, *supra* note 10, 135 U.S.App.D.C. at 32, 34–35, 416 F.2d at 788, 790–791.

18. D.C.Code §§ 40–102(a), 40–104(a)(1) (1967).

19. D.C.Code § 40–301(d) (1967).

quired therefor," [20] and to "have such permit in his immediate possession at all times when operating a motor vehicle in the District;" [21] and he is specifically commanded to "exhibit such permit to any police officer when demand is made therefor." [22] In the case at bar, we discern nothing more or less than a routine but reasonable check on appellant's credentials to operate the Pontiac, [23] followed by a prudent follow-up on his explanation for not having them. When it became known that appellant's permit had been revoked, the officer had ample justification for arresting him for operating the Pontiac after revocation [24] and, since no registration card for the vehicle could be displayed, for proceeding to ascertain its ownership. In sum, the progression of events warranted all that the officer did, and hardly tolerated less.

The judgment of conviction [25] appealed from is

Affirmed.

---

20. D.C.Code § 40–104(a)(1)(C) (1967).

21. D.C.Code § 40–301(c) (1967).

22. D.C.Code § 40–301(c) (1967).

23. Compare Washington v. United States, 130 U.S.App.D.C. 374, 379, 401 F.2d 915, 920 (1968); Jefferson v. United States, 121 U.S.App.D.C. 279, 280, 349 F.2d 714, 715 (1965); Goodwin v. United States, 121 U.S.App.D.C. 9, 10–11, 347 F.2d 793, 794–795, cert. denied, 382 U.S. 920, 86 S.Ct. 298, 15 L.Ed.2d 234 (1965); Holloway v. United States, 112 U.S.App.D.C. 190, 191, 301 F.2d 514, 515 (1962); Bell v. United States, 102 U.S.App.D.C. 383, 384–385, 254 F.2d 82, 83–84, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); United States v. Carter, 275 F.Supp. 769, 770–771 (D.D.C.1967); Williams v. United States, 263 A.2d 659, 661 (D.C.App. 1970); Mincy v. District of Columbia, 218 A.2d 507, 508 (D.C.App.1966). See also Brown v. United States, 125 U.S. App.D.C. 43, 44–45, 365 F.2d 976, 977–978 (1966).

24. The offense, a misdemeanor, consists in "operating a motor vehicle in the District during the period for which his operator's permit is revoked or suspended or for which his right to operate is suspended. . . ." D.C.Code § 40–302 (d) (1967). The question was whether appellant—when seated in the Pontiac alone, behind the steering wheel with the ignition switch on and the motor running —was "operating" it. That question assumed importance because driving after revocation is not statutorily exempted from the common law rule that an officer can make a warrantless arrest for a misdemeanor only if it is committed within his presence. See, e. g., John Bad Elk v. United States, 177 U.S. 529, 534–535, 20 S.Ct. 729, 44 L.Ed. 874 (1900); Kurtz v. Moffitt, 115 U.S. 487, 498–499, 6 S.Ct. 148, 29 L.Ed. 458 (1885). See also D.C.

Code § 4–140 (Supp. V. 1972); Thomas v. United States, 134 U.S.App.D.C. 48, 49, 412 F.2d 1095, 1096 (1969).

There appears to be no statutory definition specifically referable to use of the word "operating" in § 40–302(d). However, for purposes of the registration requirements for motor vehicles, "[t]he term 'operate' and 'operated' shall include operating, moving, standing or parking any motor vehicle or trailer on a public highway of the District of Columbia." D.C.Code § 40–101(j) (1967). And for purposes of the motor vehicle safety responsibility laws, "driver" and "operator" include "[e]very person who . . . is in actual physical control of a motor vehicle upon a public highway. . . ." D.C.Code § 40–418(b) (1967). The District of Columbia Court of Appeals has consistently held that, in consequence of these definitions, one "operates" a vehicle, within the contemplation of the provisions prohibiting driving without a permit or after revocation thereof, even when the vehicle is merely standing in a public street if he possesses the physical power to regulate its movements. Taylor v. United States, 259 A.2d 835, 836–838 (D.C.App.1969); Houston v. District of Columbia, 149 A.2d 790, 791–792 (D.C. Mun.App.1959); Richardson v. District of Columbia, 134 A.2d 492, 493 (D.C. Mun.App.1957). Sharing the view that Congress hardly contemplated disparate meanings for key terms in these closely related statutes, we agree.

25. Appellant also contends that he could not properly be convicted and sentenced, even concurrently, on counts both of grand larceny and unauthorized use of a motor vehicle. Our decision in Evans v. United States, 98 U.S.App.D.C. 122, 123, 232 F.2d 379, 380 (1956), is dispositive of that claim. See also United States v. Johnson, supra note 10, 140 U.S.App. D.C. at 57, 433 F.2d at 1163.