**Lindbergh BYRD, a/k/a Linwood Byrd, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–804.**

District of Columbia Court of Appeals.

Argued April 10, 1991.

Decided Oct. 15, 1991.

Betty M. Hunter, Washington, D.C., appointed by this court, for appellant.

James Klein, with whom Rosemary Herbert, Washington, D.C., was on the brief for Public Defender Service as amicus curiae.

Ann K.H. Simon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elisabeth A. Bresee, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, TERRY, STEADMAN, SCHWELB and WAGNER, Associate Judges, and BELSON, Senior Judge.*

STEADMAN, Associate Judge:

Arrested while driving a vehicle stolen the month before, appellant in this case was convicted both of unauthorized use of a vehicle ("UUV"), a crime under D.C.Code § 22–3815 (1989), and of receiving stolen property ("RSP"), a crime under D.C.Code § 22–3832 (1989), and was given consecutive sentences. The issue before us on appeal is a recurring one: where a defendant commits a single act which meets the requirements for conviction under two distinct statutory criminal provisions, can the defendant, after being tried and convicted in a single trial of both charges, be pun-

ished separately under each provision or under only one?

Although the answer has double jeopardy overtones, it ultimately turns on the legislative will. In the great bulk of cases, evidence of legislative intent with respect to any two specific statutes will be lacking. The issue is then resolved by application of what is known as the *Blockburger* test,[1] codified in this jurisdiction in D.C.Code § 23–112 (1989). However, the case before us is unusual in that in enacting the statute encompassing the two crimes of which appellant was convicted, the Council of the District of Columbia did include a provision addressing the general issue, D.C.Code § 22–3803 (1989). We conclude that a proper interpretation of that section permits appellant to be convicted of both RSP and UUV but to be sentenced for those crimes only concurrently, and not consecutively.

I

Appellant was arrested after police discovered that the car he was driving, a 1975 Datsun, had been reported as stolen a month previously. Although there was a key in the ignition of the car, it neither belonged to nor started the Datsun. The keyslot of the car's ignition had been "punched," probably with a screwdriver, in order to make the hole large enough for any key to fit the ignition. Testimony at trial established that the altered condition of the ignition would permit at least partial operation of the car with a key not belonging to the Datsun. During a search of the car, police found four coat hangers, a screwdriver, a wrench, and approximately eleven different keys, none of which belonged to the car.

Appellant testified that he had borrowed the Datsun from a friend identified only as "Smitty." He contradicted himself by first stating he had gone to Smitty's to pick up the car, but later indicating that Smitty had brought the car to him. Smitty told appellant that he had lost the key to the car, but

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

1. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

that it would run without a key. Appellant noticed that the ignition did not lock, and Smitty told him he could turn the car off by pushing in the "prong on the end" of the ignition and turning it.

In a bench trial, the court specifically found that appellant had "guilty knowledge that the [property] was stolen." The court found appellant guilty on both of the charged counts and sentenced him to imprisonment for a period of two to six years, execution of sentence being suspended, and to probation for a period of five years for the RSP offense, and to imprisonment for a period of twenty months to five years for the UUV count. The sentences were to be served consecutively.[2]

On appeal, appellant challenged only the sufficiency of the evidence to convict. The government in its brief commendably brought up a second issue presented by appellant's multiple convictions for UUV and RSP. It referred to (but argued as wrongly decided) our holding in *Worthy v. United States*, 509 A.2d 1157 (D.C.1986), that where the receipt and use of a motor vehicle are part of a unitary transaction, the defendant cannot be convicted of both offenses.

A panel of this court, hearing the appeal, concluded that applying the well-settled standard for review of sufficiency of evidence, *see, e.g., Rose v. United States*, 535 A.2d 849, 850 (D.C.1987), there was "ample support" for the convictions. Memorandum Order and Judgment, June 28, 1990. We think this ruling was plainly correct, and appellant does not argue it further before the en banc court. On the multiple punishment issue raised by the government, the panel deemed itself bound by *Worthy* and several related cases applying a "factual analysis" to multiple punishment issues. *E.g., Arnold v. United States*, 467 A.2d 136, 138–39 (D.C.1983) (per curiam). Noting that in this case "the facts necessary to prove RSP necessarily established UUV,[3]" the panel remanded the case to allow the trial judge to vacate one of the convictions and to resentence appellant. *Id.*

The government, asserting that the "factual analysis" test of *Worthy* and *Arnold* was "plainly inconsistent" with Supreme Court precedent, sought rehearing en banc, which we granted by order of February 27, 1991. Subsequently, the Public Defender Service was granted leave to file a brief as *amicus curiae*, which took the position that whatever the correct resolution in other situations, the issue of multiple punishments with respect to these two particular offenses is governed by D.C.Code § 22–3803, and that that section forbids more than one conviction. We agree that that Code section is controlling, although we differ with the precise interpretation proffered by the Public Defender Service.

## II

The Double Jeopardy Clause, insofar as it applies to the problem of multiple punishments imposed following a single trial,[4] limits only the authority of courts and prosecutors. "The role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Albernaz v. United States*, 450 U.S. 333, 334, 101 S.Ct. 1137, 1140, 67 L.Ed.2d 275 (1981), quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Thus, "[t]he question of what punishments are constitutionally permissible is not different from the ques-

---

2. The period of probation for RSP was to begin after appellant completed his UUV incarceration.

3. The panel also noted that "even though the Datsun was stolen nearly a month before appellant was apprehended operating the car, there was no evidence of appellant's receipt of the stolen Datsun apart from the unauthorized operation of the car at the time of his arrest."

4. "That [double jeopardy] guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It is the third protection that is at issue here.

tion of what punishments the Legislative Branch intended to be imposed." *Id.*, 450 U.S. at 344, 101 S.Ct. at 1145.

The problem normally presented is an absence of any evidence of actual legislative intent with respect to multiple punishments when two legislative provisions apply to and provide punishment for the same criminal act in a given case. Hence, almost sixty years ago, the Supreme Court laid down the rule to be followed in such situations in *Blockburger v. United States, supra*, 284 U.S. at 304, 52 S.Ct. at 182:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

The Supreme Court recently reaffirmed[5] the position that in applying this test, the court looks at the statutorily-specified elements of each offense and not the specific facts of a given case as alleged in the indictment or adduced at trial. "The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged." *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2093 n. 12, 109 L.Ed.2d 548 (1990) (emphasis in original). In *Corbin*, the Court contrasted the use of the *Blockburger* test to determine the permissibility of multiple punishments following a single trial with the appropriate test in the context of successive prosecutions. While establishing a "conduct" test in the latter "successive prosecu-

tion" context as a limitation regardless of legislative intent, it recognized the validity of the "elements" test in the multiple punishment arena as the guide to legislative intent and thereby to what punishments are constitutionally permissible.

In our jurisdiction, the *Blockburger* rule, albeit in "less than felicitous" language, has been codified as an express declaration of legislative intent in D.C.Code § 23–112 (1989).[6] *See Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980) ("the only correct way to read § 23–112 ... is to read it as embodying the *Blockburger* rule for construing the penal provisions of the District of Columbia Code"). As set forth in the legislative history of that section, "[t]o obviate the need for the courts to search for legislative intent, section 23–112 clearly states the rule for sentencing on offenses arising from the same transaction." H.R.Rep. No. 91–907, at 114, quoted in *Whalen, supra*, 445 U.S. at 693, 100 S.Ct. at 1438. Accordingly, the *Blockburger* rule is to be applied in the analysis of multiple punishment issues "in the absence of a clear indication of contrary legislative intent." *Id.*, 445 U.S. at 692, 100 S.Ct. at 1438.

Our cases in general have applied the normal statute-oriented *Blockburger* test in dealing with such questions. *See, e.g., Wilson v. United States*, 528 A.2d 876, 880 (D.C.1987) (comparison of "essential elements" of offenses of assault with intent to kill and malicious disfigurement shows that "each statutory provision" requires proof of an "element" which the other does not);

---

**5.** Prior Supreme Court holdings had indicated that the elements test was the proper one. *See, e.g., Garrett v. United States*, 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985); *United States v. Woodward*, 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985); *Albernaz v. United States*, 450 U.S. 333, 338, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); *Iannelli v. United States*, 420 U.S. 770, 785 & n. 17, 95 S.Ct. 1284, 1293–94 & n. 17, 43 L.Ed.2d 616 (1975); *Gore v. United States*, 357 U.S. 386, 389, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1958); *American Tobacco Co. v. United States*, 328 U.S. 781, 788, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946). Compare also *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734

(1989), resolving a split among the circuits and applying an "elements" test to the determination whether a lesser-included offense instruction should be given under Fed.R.Crim.P. 31(c).

**6.** D.C.Code § 23–112 states:

> A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

*Robinson v. United States,* 501 A.2d 1273, 1275–76 (D.C.1985) (comparison of "essential elements" of the offenses of assault with intent to commit rape and assault with intent to commit sodomy makes clear each is a distinct offense authorizing multiple punishments for a single transaction). However, in several cases beginning with *Arnold v. United States,* 467 A.2d 136 (D.C.1983) (per curiam), we applied a fact-based analysis in determining whether multiple punishments were permissible where a single transaction was involved. In *Arnold,* the issue was whether the defendant could be punished both for grand larceny (D.C.Code § 22–2201 (repealed Dec. 1, 1982, D.C.Law 4–164)) and unauthorized use of a motor vehicle (D.C.Code § 22–2204 (also repealed Dec. 1, 1982)). Observing that with respect to the specific factual situation in that case, the conviction for unauthorized use included proof of no fact not also adduced on the larceny charge, we held that the two charges were in that instance the "same offense" for multiple punishment purposes.[7] Subsequently, in *Worthy v.*

*United States,* 509 A.2d 1157 (D.C.1986), we applied the same analysis to convictions for unauthorized use of a vehicle and receiving stolen property, deeming *Arnold* "dispositive."[8]

We do not think the pure fact-based analysis of these holdings can survive the recent reaffirmation by the Supreme Court of the proper application of the *Blockburger* test in *Grady v. Corbin, supra.*[9] Otherwise put, these cases erred in concluding that since the facts as actually presented by the government to prove one charge were necessarily used by the government to prove the second charge, the two charges constituted the "same offense."[10] Rather, the focus should have been on the statutory elements of the two distinct charges; *viz.,* whether each statutory provision required proof of an element that the other did not. We recognize that legitimate questions may arise at times with respect to the manner in which the *Blockburger* test is to be applied in a given case. However, we need not explore that issue further here,[11] because unlike the usual

---

7. The *Arnold* court relied at least in part upon an understandable, yet shown by subsequent cases to have been an improper, reading of *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The mistaken premise asserted in *Arnold* was that "there is no meaningful difference between [the District of Columbia statutes] and the Ohio statutes analyzed in *Brown.*" 467 A.2d at 139. The fact that the Ohio Court of Appeals had authoritatively construed that state's joyriding statute to be a lesser included offense of auto theft should not have been imported into a determination as to the legislative intent in enacting the District statutes at issue. Further, as we have acknowledged: "prior to the Supreme Court's opinion in *Albernaz, supra,* there was some confusion as to whether the focus of scrutiny should be on the facts of a particular case or on the formal elements of the offenses being considered. *Albernaz* made clear that one must look to the statutory elements...." *Waller v. United States,* 531 A.2d 994, 997 (D.C.1987) (footnote omitted).

8. *See also Kingsbury v. United States,* 537 A.2d 208 (D.C.1988) (armed robbery and UUV); *Curtis v. United States,* 568 A.2d 1074 (D.C.1990) (mayhem and assault with a dangerous weapon).

9. While § 23–112, to be sure, uses the phrase "proof of a fact," the reference is to what the statutory "offense" requires in the way of proof, not to the specific "transaction." The word "re-

quires" can refer only to elements, not to whatever facts may be adduced at trial. This is in accord with the Supreme Court's holding in *Whalen, supra,* that the section embodies the *Blockburger* rule. *See also Schmuck v. United States, supra* note 5, 109 S.Ct. at 1450 ("[s]ince offenses are *statutorily defined,* that comparison [for determining lesser-included offenses] is appropriately conducted by reference to the statutory elements of the offenses in question").

10. Of course, the results in *Arnold* and *Worthy,* decided under the pre–1982 statutes, would in any event be different today under D.C.Code § 22–3803 (1983), as discussed in part III *infra.*

11. We do not understand either appellant or amicus to argue that RSP and UUV constitute a single offense under a *Blockburger* "elements" test. We have addressed the continuing validity of the *Arnold* line of cases, although not strictly required to do so to dispose of this particular appeal, because of the unacceptable continuing conflict between the two lines of panel decisions in our jurisprudence represented by the *Arnold* line on the one hand and that represented by the "elements" cases such as *Wilson v. United States, supra,* on the other. The panel opinion rested squarely upon the *Arnold* line of cases, and an original purpose in going en banc was to deal with this precise issue, which was fully briefed before us. The alternate mode of disposition was first suggested by the brief of amicus curiae filed with the en banc court.

situation, the legislature has in fact provided guidance apart from § 23–112 with respect to its intent regarding the specific offenses before us. We turn to that discussion.

### III

■ In 1982, the Council of the District of Columbia enacted the "District of Columbia Theft and White Collar Crimes Act," which revised and modernized the statutes relating to the general area of thefts and other like crimes. In doing so, the Council included an express provision, D.C.Code § 22–3803 (1989), addressing the general area of multiple punishments:

No person shall be consecutively sentenced for both:

(1) Theft and fraud;

(2) Theft and unauthorized use of a vehicle; or

(3) Theft and commercial piracy; for the same act or course of conduct.

The narrow issue before us is whether the prohibition in clause (2) of consecutive sentences for "theft" and "unauthorized use of a vehicle" was intended by the Council to apply to convictions for "receiving stolen property" and "unauthorized use of a vehicle" where, as here, the two crimes involve the same "act or course of conduct."

It could hardly be questioned that the prohibition against consecutive sentences for convictions for "theft" and the other enumerated offenses encompasses any lesser-included offense of theft. However, it is argued, RSP is not a lesser-included offense of theft and therefore the statute has no application; accordingly, the *Blockburger* test of § 23–112 is the applicable expression of legislative intent and consecutive sentences are permitted.

This is too facile a reading of § 22–3803. To the contrary, we think that the relationship existing between the offenses of theft and RSP is so intimate and intertwined when "the same act or course of conduct" is involved that RSP, if not a lesser included of theft in such a situation, is the functional equivalent thereof and should be similarly treated in interpreting the section.

We start with the concept of "theft" itself as expressed in the 1982 law. In the expanded definition of the offense contained in that law, D.C.Code § 22–3811(b), theft is defined thus:

A person commits the offense of theft if that person wrongfully obtains or uses the property of another with intent: (1) to deprive the other of a right to the property or a benefit of the property; or (2) to appropriate the property to his or her own use or to the use of a third person.

The phrase "wrongfully obtains or uses" is given further definition in § 22–3811(a), including: "(1) Taking *or exercising control over* property; (2) making an unauthorized *use, disposition, or transfer* of an interest in or possession of property." (Emphasis added.) Thus, the definition transcends the traditional and everyday concept of theft as "the felonious taking and removing of personal property with intent to deprive the rightful owner of it." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2369 (1981). At the least, it indicates that the Council had an expansive concept of the term.[12]

Turning to the definition of RSP, many of the same concepts appear. "A person commits the offense of receiving stolen property if that person buys, receives, *possesses*, or obtains control of stolen property, knowing or having reason to believe that the property was stolen, with intent to deprive another of the right to the property or a benefit of the property." D.C.Code § 22–3832(a) (emphasis added). The intent required for RSP is expressed in virtually identical language to that used in the first

---

**12.** In the "Extension of Comments" on the 1982 law, the Chairperson of the Committee on the Judiciary, in his discussion of the scope of the definition of "theft" in the 1982 law, noted that there were "more than 30 statutes contained in Title 22 of the District of Columbia Code which prohibits various forms of theft or fraud." He then made a partial listing of such statutes, which included "D.C.Code Section 22–2205, Receiving Stolen Goods." EXTENSION OF COMMENTS ON BILL NO. 4–133: THE DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982 (July 20, 1982) (submitted by David A. Clarke).

of the two types of intents required for theft, and both theft and RSP apply to the mere act of possession or use with such an intent. This recitation of the language is sufficient to show the substantial interrelation between the two reflected in the statutory definitions.[13]

The Supreme Court has recognized the same linkage in comparable types of statutes. In *Heflin v. United States*, 358 U.S. 415, 417, 79 S.Ct. 451, 452, 3 L.Ed.2d 407 (1959), the Court was faced with the question whether the appellant could be convicted both of "feloniously receiving and feloniously taking the same property" under the Federal Bank Robbery Act. In holding that he could not as a matter of congressional intent, the Court recognized that nonetheless "in logic" Congress could have pyramided the offenses. Subsequently, in *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), the Court expressly recognized the relationship between the two types of offenses and their nature as not lesser-included but alternate offenses:

> Situations will no doubt often exist where there is evidence before a grand jury or prosecutor that a certain person participated in a bank robbery and also evidence that that person, though not himself the robber, at least knowingly received the proceeds of the robbery. In such a case there can be no impropriety for a grand jury to return an indictment or for a prosecutor to file an information containing counts charging violations of [both robbery and RSP]. If, upon the trial of the case the District Judge is satisfied that there is sufficient evidence to go to the jury upon both counts, he must, under *Heflin* and *Milanovich*, instruct the members of the jury that they

may not convict the defendant both for robbing a bank and for receiving the proceeds of the robbery. He should instruct them that they must first consider the charges under [robbery], and should consider the charge under [RSP] only if they find insufficient proof that the defendant himself was a participant in the robbery.

We subsequently recognized the proper application of this same "rule of priority" to cases involving our larceny and RSP statutes. *Franklin v. United States*, 392 A.2d 516 (D.C.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979). We specifically noted the kinship of such a rule to that governing lesser-included offenses: "Application of a rule of priority of jury consideration in fashioning a rule of priority for appellate remedial purposes is not unique to the situation involved in the instant cases.... The rationale for this remedy [of vacation of the lesser-included offense] is that, as here, the jury should have been charged to consider the lesser included offense only if it had already determined that the appellant was not guilty of the main offense." 392 A.2d at 519 n. 3. More recently, in our *en banc* decision in *Comber v. United States*, 584 A.2d 26, 53 n. 46 (D.C.1990), we recognized a somewhat similar relationship between the mutually inconsistent offenses of voluntary and involuntary manslaughter by suggesting that the trial court "direct the jury to consider voluntary manslaughter first in its deliberations" because voluntary manslaughter is typically deemed a more serious offense than involuntary manslaughter.

■ Further recognition of the link between the two types of offenses may be

---

**13.** So close is this link that we ourselves have stated: "Receiving stolen property is a lesser included offense of theft. [A defendant] thus cannot be convicted of both theft and receipt of stolen goods with respect to the same property." *Roberts v. United States*, 508 A.2d 110 (D.C.1986). However, this language should be viewed as no more than a recognition that, as subsequently to be discussed, the two offenses have generally been considered alternates, precluding conviction for both, just as is the case with lesser-included offenses. At common law,

it appears that larceny and RSP were considered different offenses for what has been termed "commonsensical, if not obvious" reasons. *Milanovich v. United States*, 365 U.S. 551, 559, 81 S.Ct. 728, 732, 5 L.Ed.2d 773 (1961) (Frankfurter, J., dissenting); *see also* 4 Torcia, Wharton's Criminal Law, § 461, at 23–24 (14th ed. 1981). To avoid any future misunderstanding, we hereby expressly disapprove the quoted statement in *Roberts* that RSP is a "lesser included offense of theft."

found in the area of presumptions. A defendant's unexplained (or unsatisfactorily explained) possession of recently stolen property may support a conviction of larceny, *e.g.*, *United States v. Johnson*, 140 U.S.App.D.C. 54, 60, 433 F.2d 1160, 1166 (1970), or receiving stolen property, *e.g.*, *Blackledge v. United States*, 447 A.2d 46, 50 (D.C.1982).

Finally, it is significant to note the anomaly of treating § 22–3803 as inapplicable to RSP. The defendant who was the original thief could, under § 22–3803, be given only concurrent sentences not to exceed ten years,[14] while the one to whom he loaned the car for a joyride could be consecutively sentenced for a potential maximum term of twelve years, as was in fact almost the case here.[15] This is a patently illogical result. While it is not the proper function of any court to gratuitously fill in gaps left by the legislature, *West Va. Univ. Hosp., Inc. v. Casey*, — U.S. —, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991), quoting *Iselin v. United States*, 270 U.S. 245, 250–51, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) (" '[w]hat the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court' "), where language is fairly capable of two interpretations, we think it most unlikely that the legislature intended that interpretation which would be "an unreasonable one 'plainly at variance with the policy of the legislation as a whole.' " *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966), quoting *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940).

In sum, we conclude that given the intimate relationship between theft and RSP

as discussed above, most notably demonstrated by the "rule of priority," the provisions of § 22–3803 should be interpreted as a manifestation of legislative will to prohibit consecutive sentences for convictions of RSP and UUV arising out of the "same act or course of conduct."

## IV

■ Section 22–3803, however, does not prohibit convictions for both RSP and UUV, but only the imposition of consecutive sentences. It is contended that notwithstanding the plain language of the statute, the Council merely expressed the then-understood limitations of the multiple punishment concept. Since that concept has been somewhat expanded subsequently, the application of the section should be correspondingly expanded. We find no warrant for such a deviation from the clear legislative language.

Up until a decade or so ago, it was generally thought that the prohibition against multiple punishments applied only to *consecutive* sentencing. However, in a case decided prior to the enactment of the 1982 law, *Doepel v. United States*, 434 A.2d 449, 459 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981),[16] we recognized that "even a concurrent sentence is an element of punishment because of potential collateral consequences" and accordingly forbade such concurrent sentences for both felony murder and the underlying felony.[17] This interpretation of the result that follows from a *Blockburger* analysis of multiple punishments was, four years later, confirmed by the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). There,

---

**14.** The maximum term for "Theft in the 1st degree" is ten years. D.C.Code § 22–3812(a).

**15.** The maximum term for UUV is five years, D.C.Code § 22–3815(d)(1), and for RSP seven years, D.C.Code § 22–3832(c)(1). Appellant faces a maximum exposure of eleven years under the sentences imposed here, set forth above.

**16.** An even earlier case to the same effect was *Waller v. United States*, 389 A.2d 801, 808 n. 8 (D.C.1978), *cert. denied*, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980), where we said:

[i]t is immaterial to this analysis [of merger] that appellant Waller was sentenced concurrently for conviction of the underlying felony [in addition to felony murder]. If this conviction is founded in error, we are bound to reverse, in light of potential collateral consequences stemming from the conviction.

**17.** *Whalen, supra,* had applied the traditional *Blockburger* test, contained in D.C.Code § 23–112, in barring consecutive sentences in such situations. See discussion *supra*.

the Court first concluded that Congress did not intend that the petitioner's conduct be punishable both under a statute prohibiting the receipt of a firearm and a separate statute prohibiting its possession. It then held that since a separate conviction, even with a concurrent sentence, could have collateral consequences, the imposition of even concurrent sentences "cannot be squared with Congress' intention." 470 U.S. at 864, 105 S.Ct. at 1673.

Here, however, the Council's expressed intent is clear. What is prohibited by § 22–3803 is not dual convictions or concurrent sentences, but, specifically, that a defendant not be "consecutively sentenced." [18] If there were any doubt on the issue, the Committee Report accompanying the bill states that "[n]othing in this section is intended to prohibit the court from imposing concurrent sentences" for the offenses enumerated therein. COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, Bill No. 4–133, § 103, at 10 (June 1, 1982).

The "Extension of Comments" to this same report, see note [12] supra, indicated an awareness of the import of the provision by citing Evans v. United States, 98 U.S.App.D.C. 122, 123, 232 F.2d 379, 380 (1956), and United States v. Johnson, supra, 140 U.S.App.D.C. at 57, 433 F.2d at 1163, two older cases decided by the United States Court of Appeals for the District of Columbia Circuit. In these cases, the court held that concurrent sentences could properly be imposed on a defendant for grand larceny and UUV despite the fact that the two offenses grew out of one act.[19]

The gradation of punishment for an offense is clearly a matter of legislative choice, whether it be as severe as authorizing dual punishment for lesser-included offenses, see Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (legislature specifically authorized dual sentences and convictions for armed criminal action and first-degree robbery), or as mild as prohibiting the imposition of multiple convictions even where two offenses clearly involve different elements. See Watson v. United States, 524 A.2d 736, 743 (D.C.1987). Thus, there is nothing aberrational in imputing to the Council the precise intent its plain language provides,[20] which is squarely in accord with a once-existent practice even under a Blockburger analysis.

The judgment convicting appellant on the counts of RSP and UUV is affirmed, and the case is remanded for resentencing in accordance with this opinion.

*So ordered.*

BELSON, Senior Judge, with whom WAGNER, Associate Judge, joins, concurring in part and dissenting in part:

I agree with the majority that the fact-based analysis of *Arnold v. United States,* 467 A.2d 136 (D.C.1983) and *Worthy v. United States,* 509 A.2d 1157 (D.C.1986), cannot survive in light of the Supreme Court's reaffirmation that the *Blockburger* test is "concerned solely with the statutory elements of the offenses charged" and "has nothing to do with the *evidence* presented at trial." [1] *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2093 n. 12, 109

---

**18.** Appellant draws to our attention the fact that the heading of § 22–3803 in the official print of the 1982 law, D.C.Law 4–164, § 103, 29 D.C.R. 3976 (Dec. 1, 1982) reads "Duplicative Punishments," and not "Consecutive Sentences," as appears in the D.C.Code version of § 22–2803. We do not think this can affect the plain words of the operative provision. Furthermore, notwithstanding the recent recognition that dual convictions can have certain collateral consequences even with concurrent sentences, plainly the major impact of multiple punishment is where sentences are consecutive.

**19.** Obviously, for the reasons discussed above, these holdings allowing concurrent sentences

are no longer good law insofar as they turn on the application of a *Blockburger* analysis. This is no reason, however, to disregard the plain language of the statute as an expression of the result that the Council intended, and had the unquestioned power, to bring about.

**20.** "[A] concurrent sentence is traditionally imposed as a *less* severe sanction than a consecutive sentence." *Ralston v. Robinson,* 454 U.S. 201, 216 n. 9, 102 S.Ct. 233, 243 n. 9, 70 L.Ed.2d 345 (1981) (emphasis in original).

**1.** Thus, I join in parts I and II of the majority opinion.

L.Ed.2d 548 (1990) (emphasis in original); *see also Taylor v. United States*, 508 A.2d 99 (D.C.1986). But, because the *Blockburger* test is a mandatory rule of statutory construction in this jurisdiction, *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980); D.C.Code § 23–112 (1989), I cannot agree that the D.C. Council by enacting D.C.Code § 22–3803 (1989) evinced a contrary legislative intent so clearly as to overcome the statutory presumption that two offenses arising from the same transaction may be punished by the imposition of consecutive sentences where each offense requires proof of a fact that the other does not. The majority errs, I think, in going through the very sort of effort to divine legislative intent that Congress intended to obviate by adopting § 23–112.

In 1970, dissatisfied with the trend of decisions by the United States Court of Appeals for the District of Columbia which "prohibit[ed] consecutive sentences for offenses arising out of the same transaction absent some plain indication of congressional intent," Congress enacted § 210(a) of Title II of Public Law 91–358, codified at D.C.Code § 23–112. H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 114 (1970). By enacting this provision, Congress created a statutory presumption that it, the legislature, intended to authorize consecutive sentences for offenses arising out of the same transaction when each offense requires proof of a fact which the other does not, thus "obviat[ing] the need for the courts to search for legislative intent." *Id.; see also Ball v. United States*, 429 A.2d 1353, 1357 (D.C.1981) ("§ 23–112 ... establishes a presumption of consecutive sentences for conviction of separate offenses").

To overcome this general statutory presumption, the Council or Congress must clearly indicate its intention to prohibit the imposition of consecutive sentences in particular instances. *See Whalen, supra*, 445 U.S. at 692, 100 S.Ct. at 1432. With respect to multiple punishment for the offenses of theft and unauthorized use of a vehicle (UUV) arising from the same act, the Council has clearly indicated its intent: "[n]o person shall be consecutively sentenced for both ... [t]heft and unauthorized use of a vehicle ... for the same act or course of conduct." D.C.Code § 22–3803.[2] Further, it is reasonable to posit, as the majority does, that this provision also

**2.** I agree with the majority that § 22–3803 does not prohibit the court from imposing *concurrent* sentences for the offenses of theft and UUV arising from the same act or conduct. [Majority at 393]. The court, nevertheless, must still determine whether the act or conduct violating the two offenses constitutes the "same" offense for which concurrent sentences, as well as consecutive sentences, are proscribed. *Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) ("second conviction, even if it results in no greater sentence, is an impermissible punishment" because of potential adverse collateral consequences that attach to the conviction such as delay of eligibility for parole, increase in sentence under recidivist statute, and use as impeachment of the defendant's credibility); *Doepel v. United States*, 434 A.2d 449, 459 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981) ("even a concurrent sentence is an element of punishment because of potential collateral consequences" (footnote omitted)); *Waller v. United States*, 389 A.2d 801, 808 n. 8 (D.C.1978), *cert. denied*, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980) ("It is immaterial to [double jeopardy] analysis that appellant Waller was sentenced concurrently ... in light of potential collateral consequences stemming from the conviction."). In comments regarding § 22–3803, Chairperson Clarke, who sponsored the bill, anticipated that the court would continue to determine whether a single act violating two separate and distinct statutory provisions constitutes the same offense for which only a single punishment would be permissible. EXTENSION OF COMMENTS ON BILL No. 4–133: THE DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982, at 6 (July 20, 1982) (submitted by David A. Clarke) ("Nor is anything in this section intended to prohibit the court from deciding to vacate a conviction on the grounds that two offenses are identical." (Footnote omitted)).

Although the court has previously held that "we are free to determine legislative intent without restriction to any single rule of statutory construction" where concurrent (rather than consecutive) sentences are being considered, *Ball, supra*, 429 A.2d at 1358, the court should adopt the Supreme Court's approach and use the *Blockburger* test. *See Ball, supra*, 470 U.S. at 856, 105 S.Ct. at 1668. Taking such an approach would provide consistency in determining whether a single act violating two separate and distinct offenses results in the "same" offense for which multiple punishment (regardless of whether it is the imposition of consecutive sentences or concurrent sentences) is prohibited.

manifests the Council's intent with respect to lesser included offenses of theft and UUV because a lesser included offense is the *same* offense as the greater offense for double jeopardy purposes. *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977) ("greater offense is ... by definition the 'same' for purposes of double jeopardy as any lesser offense included in it"). The majority, however, goes much further and concludes—evidently—that the Council also clearly intended the offense of receiving stolen property (RSP) to come within the meaning of theft for the purpose of prohibiting the imposition of consecutive sentences for RSP and UUV arising from the same act or conduct. This interpretation is supported neither by the plain language of the statute nor by its legislative history.

In interpreting a statute, we must give effect to its plain meaning when the words used in it are clear. *J. Parreco & Son v. District of Columbia Rental Housing Comm'n,* 567 A.2d 43, 45 (D.C.1989) (citations omitted). "Absent a 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Albernaz v. United States,* 450 U.S. 333, 336, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The plain language of § 22–3803 expressly prohibits the imposition of consecutive sentences for only the following sets of offenses arising from the same act or course of conduct: for theft and fraud, for theft and UUV, and for theft and commercial piracy. It does not expressly prohibit, however, the imposition of consecutive sentences for RSP and UUV arising from the same act. Had the legislature so intended, it could easily have done so. The court has no authority to rewrite an unambiguous statute, even for the purpose of making it more equitable or fairer. *J. Parreco & Son v. District of Columbia Rental Housing Comm'n, supra,* 567 A.2d at 44. Essentially, that is what the majority seeks to do. The statutory language involved here,

which prohibits the imposition of consecutive sentences for certain specified crimes, is clear and unambiguous. The role of the court is to apply it according to its plain terms. *See West Virginia University Hospitals, Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991).

We are not unmindful that the court may look beyond a statute's plain meaning if there are persuasive reasons for doing so, *e.g.,* to avoid absurd results, obvious injustice or defeat of the statutory purpose. *People's Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc). Nevertheless, even such results (which are not involved here) must be accommodated where a statute leaves no basis to avoid them. *See Wright v. United States,* 315 A.2d 839, 841 (D.C.1974). Here, there is no way to avoid the clear mandate of the statute, as neither its language (in particular terms or in overall context) nor its legislative history discloses an intent to include the interpretation adopted by the majority.

I think it unnecessary to resort to legislative history to decide this case, but if one does so, one sees that the legislative history is consistent with the plain meaning of the statute. In explaining what this section does, Chairperson Clarke stated that "[t]his provision prohibits the imposition of consecutive sentences in cases in which the same act or course of conduct violates both ... the Theft *(section 111)* and Unauthorized Use of Vehicles *(section 115)* provisions." EXTENSION OF COMMENTS, *supra* note 2, at 6 (emphasis added). This reference only to § 111, the definition of the theft offense codified at D.C.Code § 22–3811, demonstrates that the Council did not intend RSP, § 131, to be considered within the meaning of theft for purposes of this provision. Although the Council consolidated many of the theft-related offenses into the theft offense, it expressly preserved the separate offense of RSP. Furthermore, Chairperson Clarke stated that the Council did not intend to abrogate D.C.Code § 23–112 except "for the offenses *listed.*" *Id.* at 7 (emphasis added). Because the Council was aware that § 23–112 obviates the need for the court to

search for legislative intent to confirm the trial court's power to impose consecutive sentences for offenses arising from the same act when *Blockburger* is satisfied, the Council's failure to include RSP and UUV must be taken to indicate that it intentionally omitted that combination of offenses from § 22–3803.

In each of the three categories for which the prohibition against consecutive sentences is addressed in § 22–3803, theft is linked to another offense, one of which is UUV. D.C.Code § 22–3803(2). Theft, its elements and penalties, are covered in subchapter II of the title under the caption "Theft; Related Offenses." Significantly, the offense of receiving stolen property is not included in subchapter II, but in a separate subchapter IV, along with trafficking in stolen property. In the legislative history, trafficking in stolen property and receiving stolen property are listed under "Subtitle 4—Dealing in Stolen Property." I regard these separate categorizations as a clear indication that the legislature intended to separate the theft offenses from RSP. Thus, it is reasonable to conclude that the omission of RSP from the provisions of § 22–3803 was equally intentional.

The majority, nevertheless, looks past the plain meaning of the statute. It concludes that it is "most unlikely" that the Council did not intend to include RSP within the meaning of theft because of the relationship between theft and RSP, and the anomaly otherwise created in authorizing the sentencing of a defendant convicted of both RSP and UUV to a maximum sentence of twelve years as contrasted with a maximum sentence of ten years for a defendant convicted of both theft and UUV.[3] What the majority does, however, "is not a construction of a statute but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial

function." *West Virginia University Hospitals, Inc. v. Casey, supra,* 111 S.Ct. at 1148 (quoting *Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926)).

Finding that the relationship between the offenses of theft and RSP is "so intimate and intertwined when 'the same act or course of conduct' is involved," the majority holds that RSP is the "functional equivalent" of theft.[4] A more accurate characterization of the relationship between theft and RSP is that they are closely related to one another, but mutually inconsistent. *See State v. Bleau,* 139 Vt. 305, 308, 428 A.2d 1097, 1099 (1981) ("The crimes of receiving stolen goods and larceny are inconsistent."). "It is an elementary principle of law that the principal in a theft, or the person who actually steals the property, cannot be convicted of the crime of receiving, concealing, or aiding in the concealment of the property stolen." Annotation, *May Participant in Larceny or Theft be Convicted of Offenses of Receiving or Concealing the Stolen Property,* 136 A.L.R. 1087, 1088 (1942). "And this is so for the commonsensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken." *Milanovich v. United States,* 365 U.S. 551, 558, 81 S.Ct. 728, 732, 5 L.Ed.2d 773 (1961) (Frankfurter, J., dissenting). Thus, unlike a lesser included offense where the lesser offense is committed at the same time as the greater offense, a defendant cannot commit theft and RSP at the same time.

To support its position that theft and RSP are "functionally equivalent," the majority relies heavily on the expanded definition of theft in D.C.Code § 22–3811 which overlaps with the definition of RSP. The Council, however, expanded the definition of theft to consolidate various theft-related offenses by eliminating "highly technical" distinctions between theft-related offenses that "served only to confuse the charging

---

**3.** If RSP is included within the meaning of theft for purposes of § 22–3803, the maximum sentence for a defendant convicted of both RSP and UUV would be seven years.

**4.** I agree with the majority's express disapproval of the language in *Roberts v. United States,* 508 A.2d 110, 113 (D.C.1986) that "[RSP] is a lesser included offense of theft."

process." Council of the District of Columbia, Report of the Committee on the Judiciary, Bill No. 4–133, § 111, at 10 (June 1, 1982). Yet, as noted above, the Council intentionally chose to preserve the offense of RSP in a separate subchapter, rather than combine it with the consolidated theft offense. Furthermore, the Council included in the theft definition the language "exercising control over property," which the majority emphasizes, in order to address the "typical embezzlement situation" and included the language "making an unauthorized use, disposition, or transfer of an interest in or possession of property" to address "the situation in which someone converts, conceals, or misappropriates anothers property." *Id.* at 11; Extension of Comments, *supra* note 2, at 16. In light of the legislative history, the Council's "expansive concept" of theft should not be interpreted to incorporate more than the Council stated.

Furthermore, the sentencing anomaly created by heeding the plain meaning of § 22–3803 is not so serious that it is unreasonable to apply § 22–3803 literally.[5] The Council indicated that it prohibited the imposition of *consecutive* sentences for theft and UUV arising from the same act to carry forward the current law as stated by the United States Court of Appeals for the District of Columbia in *United States v. Johnson,* 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970) and *Evans v. United States,* 98 U.S.App.D.C. 122, 232 F.2d 379 (1956).

Because § 22–3803 does not clearly prohibit the imposition of consecutive sentences for the offenses of RSP and UUV, we must apply the *Blockburger* test to determine whether the same act violating both RSP and UUV constitutes a single offense for which consecutive sentences are prohibited. The RSP statute requires proof that the property in question must have been stolen by someone, a fact which the UUV statute does not require. Conversely, the UUV statute requires proof

that the defendant operated or drove the vehicle for his own purpose, an element absent from the RSP statute. Thus, each provision requires proof of a fact which the other does not. Because the *Blockburger* test is fully satisfied and there is no clear indication of contrary legislative intent, I would affirm the imposition of consecutive sentences for the offenses of RSP and UUV arising from the same conduct or transaction.

---

5. The level of possible punishment does not always increase in accordance with common perceptions of offense severity under our current statutes. (*Cf.* D.C.Code § 22–2801 (rape)—maximum, life, with D.C.Code § 22–3502 (sodomy with a person over 16 years old—10 year maximum)). The sentencing differential between RSP and UUV and Theft and UUV is not "absurd," nor is it so unfair as to warrant judicial legislation in this case.